UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-153-RJC-DCK

| | |
|---|---|
| TAMARA MUSENGE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| | ) |
| SMARTWAY OF THE CAROLINAS, | ) |
| LLC d/b/a SMARTWHEELS, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Judgment on the Pleadings, (Doc. No. 19); its memorandum in support, (Doc. No. 20); Plaintiff's response in opposition, (Doc. No. 24); and Defendant's reply, (Doc. No. 25).

I. BACKGROUND

A. Procedural Background

Tamara Musenge ("Plaintiff") filed her Amended Complaint on April 10, 2015. (Doc. No. 4). SmartWay of the Carolinas, LLC ("Defendant") filed its Motion for Judgment on the Pleadings on March 7, 2016. (Doc. No. 19). On September 13, 2016, the Magistrate Judge granted the parties' Motion to Stay Proceedings, (Doc. No. 27), pending appeal in the Court of Appeals for the District of Columbia Circuit, which involved the Telephone Consumer Protection Act ("TCPA")—the basis for one of Plaintiff's claims. (Doc. No. 33). The Court lifted that stay on July 11, 2018. (Doc.

1

No. 44). With the stay lifted, the Court now turns to Defendant's pending Motion for Judgment on the Pleadings, (Doc. No. 19).

B. Factual Background

On January 4, 2014, Plaintiff signed a Lease Agreement with Defendant, leasing a set of tires. (Doc. No. 20-2). Along with this agreement, Plaintiff completed a Lease Order Form, listing several personal references and their contact information in the event Plaintiff were to fall behind on her payments. (Doc. No. 20-1). This Order Form stated:

> I consent to SmartWheels contacting any person or company that I have listed above for references or assistance in locating or contacting me, and I fully release all parties from all liability for any damage that may result. My (our) signature(s) below indicates that for purpose of confirmation, I (we) have voluntarily waived the protection of all rights to privacy laws." … By providing my telephone number(s), including any cellular number(s), I consent to receiving calls (both live and automated) from SmartWheels regarding my agreement(s).

(Id.).

Plaintiff eventually fell behind on her payments to Defendant. (Doc. No. 4 ¶5). As a result, Defendant began sending text messages to Plaintiff's cellular phone to both collect payments and solicit promotional offers. (Id. ¶6). At least once, Plaintiff responded to Defendant's messages, revoking her consent to be contacted through text messages. (Id. ¶7). Nonetheless, Defendant continued to text Plaintiff regarding her debt. (Id.).

Aside from telephone communication, Defendant also attempted several in-person visits to confront Plaintiff. Several times, Defendant's representative

2

appeared at Plaintiff's residence, "pounding on [her] door and [waking] her infant." (Id. ¶10). At least once, a representative attempted to twist Plaintiff's front doorknob in an attempt to enter when Plaintiff did not answer the door. (Id. ¶11). Defendant also sent a representative to Plaintiff's workplace. (Id. ¶9). The representative bypassed the reception area unannounced and uninvited, resulting in Plaintiff being questioned by the Human Resources department. (Id.).

Defendant also sent several letters to Plaintiff. These letters did not have markings on them hinting at their confidential nature, leading to a coworker of Plaintiff's reading the sensitive material inside. (Id. ¶14). Some letters also threatened criminal action under both Florida and North Carolina law. (Id. ¶13).

From Defendant's debt collection practices, Plaintiff's Complaint now alleges claims for (1) violation of the TCPA, (2) violation of the North Carolina Debt Collection Act ("NCDPA"), (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), (4) invasion of privacy by intrusion upon seclusion, (5) intentional or negligent infliction of emotional distress, and (6) fraud. (Doc. No. 4). Since her Complaint, Plaintiff has voluntarily dismissed her fraud claim. (Doc. No. 24 at 2, n.1).

## II. STANDARD OF REVIEW

Rule 12(c) motions are governed by the same standard as motions brought under Rule 12(b)(6). Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013). In its review of a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the

plaintiff." Mylan Labs Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993) (internal citation omitted). But the court need not accept allegations that "contradict matters properly subject to judicial notice or by exhibit." Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006) (quoting Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)). The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Fed R. Civ. P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for all purposes."). In contrast to a Rule 12(b)(6) motion, the court may consider the answer as well on a motion brought pursuant to Rule 12(c). Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011).

The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Thus, the applicable test on a motion for judgment on the pleadings is whether, when viewed in the light most favorable to the party

4

against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law. Alexander, 801 F. Supp. 2d at 433.

III. DISCUSSION

    A.    <u>Plaintiff' Does Not Properly Plead a Claim Under the Telephone Consumer Protection Act.</u>

The Telephone Consumer Protection Act forbids

> any person within the United States, or any person outside the United States if the recipient is within the United States . . . [from making] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii); <u>Hester v. JPMorgan Chase Bank (In re Hester)</u>, Nos. 11-04375-8-DMW, 15-00001-8-DMW, 2015 Bankr. LEXIS 3508, at *18-19 (Bankr. E.D.N.C. Oct. 16, 2015). For the purposes of the TCPA, text messages are included within the definition of "call." <u>Campbell-Ewald Co. v. Gomez</u>, 136 S. Ct. 663, 667 (2016), <u>as revised</u> (Feb. 9, 2016). Defendant argues that Plaintiff's claim under the TCPA must fail because her Complaint makes no allegation that Defendant used an automated telephone dialing system. (Doc. No. 20 at 4–5). The TCPA defines "automatic telephone dialing system" as equipment with the capacity to: "(A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) dial such numbers." 47 U.S.C. § 227. Acknowledging that her Complaint lacks textual allegations of an automated system, Plaintiff argues that the

5

exhibits attached to the Complaint showing the text messages she received from Defendant sufficiently prove their automated nature. (Doc. No. 24 at 8). Those texts, Plaintiff explains, show a repeated transmission of generic, non-individualized, messages indicative of an ATDS. (Id.).

A plaintiff's burden to allege the use of an ATDS is not a heavy one. Simply alleging the use of an ATDS system and supporting that allegation with observations of the nature of the calls or text messages would suffice.[1] It would be unreasonable for a plaintiff to factually plead the technical details of an ATDS without the benefit of discovery. Stewart, 124 F. Supp. 3d at 734 (citing Hickey v. Voxernet LLC, 887 F.Supp.2d 1125, 1129–30 (W.D. Wash. 2012)). That being said, *some* level of factual allegation is required. Simply attaching reproductions of text messages with no further connection to her specific allegations is insufficient. Plaintiff fails to state a claim under the TCPA.

Plaintiff's attempt in the middle or her response brief to request leave to amend

---

[1] See, e.g. Stewart v. T-Mobile USA, Inc., 124 F. Supp. 3d 729, 734 (D.S.C. 2015) ("by asserting that she received multiple telephone calls containing a specific prerecorded message—that was ostensibly intended for someone other than the actual recipient and followed by a prompt to connect the recipient to a live representative—Plaintiff has alleged sufficient detail in this regard to support her TCPA claim."); Isgett v. Northstar Location Servs., LLC, 4:14-CV-4810-RBH, 2015 WL 4072094, at *3 (D.S.C. July 2, 2015) (finding a plaintiff sufficiently pleaded a claim under the TCPA after alleging that the defendant used "an automatic telephone dialing system as defined by 47 U.S.C. § 227" and "made several phone calls within a twenty-four hour period, used six different telephone numbers, placed calls from telephone number (678) 784–3682 using an automated dialer, and made the calls to collect an alleged debt.").

her Complaint (Doc. No. 24 at 10) violates Rule 7.1(c)(2) of the Local Rules, which states, "Motions shall not be included in responsive briefs. Each motion must be set forth as a separately filed pleading." Without a separate motion filed by Plaintiff, the Court refrains from ruling on Plaintiff's request. Therefore, the Court grants Defendants' motion as to Plaintiff's TCPA claim and dismisses Count I without prejudice. The Court grants Plaintiff fifteen (15) days to file a motion seeking to amend her Complaint so that Plaintiff can have the opportunity to state her claim adequately. Dismissal shall be with prejudice if Plaintiff does not file a motion seeking leave to amend her Complaint within fifteen (15) days.

  B. <u>Plaintiff Properly Alleges a Claim Under the North Carolina Debt Collection Act.</u>

Defendant argues that Plaintiff's claim under the NCDCA fails to allege an actual injury or damages, warranting the claim's dismissal. (Doc. No. 20 at 5). In order to establish a claim under the NCDCA, a plaintiff must first establish three requirements. "First, the obligation owed must be a 'debt'; second, the one owing the obligation must be a 'consumer'; and third, the one trying to collect the obligation must be a 'debt collector.'" Friscia v. Bank of Am., N.A., 775 S.E.2d 36 (N.C. Ct. App. 2015) (quoting Reid v. Ayers, 531 S.E.2d 231, 233 (N.C. Ct. App. 2000)); N.C. Gen. Stat. § 75–50(1)–(3). After fulfilling these three requirements, "a claim for unfair debt collection practices must then meet the three generalized requirements found in section 75–1.1: (1) an unfair act (2) in or affecting commerce (3) proximately causing injury." Id. (quoting Reid v. Ayers, 531 S.E.2d at 235).

7

Here, the crux of Defendant's argument rests on the assertion that Plaintiff has insufficiently alleged an injury. Defendant argues that the Complaint alleges mere conclusory allegations of suffering "mental anguish, anxiety, emotional distress, embarrassment, frustration, anxiety, fear, frustration, upset, and inconvenience." (Doc. No. 20 at 5). In response, Plaintiff embraces Defendant's citation of her claimed damages and states that she further specified the damages she occurred by describing "a series of coercive, harassing, deceptive, and unconscionable debt collection tactics which proximately caused the harm." (Doc. No. 24 at 10).

Plaintiff sufficiently alleges injuries under the NCDCA. While Plaintiff could have plead more facts, the Court does not find that she must allege more at this stage of litigation for her claim to survive. Defendant does not argue that emotional damages cannot constitute Plaintiff's injury under this cause of action. Rather, Defendant argues that they were not specifically plead, citing <u>Vecchinoe v. Monarch Recovery</u>, 2014 U.S. Dist. LEXIS 169981 (M.D.N.C. 2014).

There, the plaintiff posited claims under both the NCDCA and the Fair Credit Reporting Act. <u>Vecchinoe</u>, 2014 U.S. Dist. LEXIS 169981 at *2–3. For his injury, the plaintiff "generally alleged that Defendant's actions caused credit denials, credit delays, inability to apply for credit, loss of use of funds, mental anguish, emotional distress, humiliation, a loss of reputation, and expenditures and fees." <u>Id.</u> at *11. The court then found that such conclusory statements of emotional distress did not support an award of compensatory, actual damages. <u>Id.</u> In doing so, the court cited to <u>Ross v. F.D.I.C.</u>, 625 F.3d 808 (4th Cir. 2010). <u>Id.</u> <u>Ross</u>, however, reviewed a

8

district court's finding at the *summary judgment* stage. Ross, 625 F.3d at 812. The Fourth Circuit assessed the plaintiff's noneconomic damages in relation to evidence provided after discovery, not whether the plaintiff sufficiently alleged the damages to bring the claim in the first place. Id. at 818. The court found that the plaintiff failed to "*provide evidence* demonstrating that [the defendant's] alleged phone calls were the cause of her injuries." Id. It was only after finding no medical testimony supporting Plaintiff's claim that the court held mere conclusory statements of emotional distress by a plaintiff could not present a genuine issue of material fact to survive a motion for summary judgment. Id. ("Presented only with [the plaintiff's] conclusory assertions, no reasonable jury could find that [the defendant]'s debt collection practices were the proximate cause of Ross's non-economic injuries.").

Ross stands for the proposition that Plaintiff's conclusory Complaint, without further evidence, could not survive a motion for summary judgment. But the instant case involves a motion to dismiss on the pleadings governed not by an evidentiary based summary judgment standard but rather a motion to dismiss pleadings standard. As alleged, Plaintiff sufficiently pled non-economic damages. The question of whether or not Plaintiff can present evidence to support these claims survives for another day.[2]

---

[2] Defendant also relies on Barnett v. Creditors Specialty Serv., 2013 U.S. Dist. LEXIS 53821 (W.D.N.C. 2013). That case assessed a motion for default judgment. Like Vecchinoe, Barnett is also far from persuasive in the current inquiry. The question in Barnett was not whether the plaintiff sufficiently plead an injury, but whether the plaintiff sufficiently supported her claim with enough evidence to justify

C.   Plaintiff Fails to Properly Allege a Violation of the North Carolina Unfair and Deceptive Trade Practices Act.

Plaintiff's third claim alleges a violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). (Doc. No. 4 ¶¶37–40). The UDTPA states, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1.

Defendant correctly argues that the NCDCA provides the exclusive remedy to unfair and deceptive trade practices in the context of debt collection, replacing and invalidating any claim Plaintiff has under the UDTPA. (Doc. No. 20 at 7). Plaintiff asks the Court to preserve her UDTPA claim "until discovery bears out that all Defendant's unfair and deceptive trade practices took place within the scope of the NCDCA." (Id. at 14) (emphasis omitted). Plaintiff cannot preserve a cause of action that was not properly alleged. (Doc. No. 25 at 6). Plaintiff's Complaint *only* alleges conduct in relation to debt collection, therefore barring any entitlement of preserving her UDTPA claim. (Id.).

Both the UDTPA and the NCDCA are found under Chapter 75 of the North Carolina General Statutes. The UDTPA is found in Article 1 of Chapter 75. N.C. Gen. Stat. § 75-1.1. The NCDCA, however, is in Article 2 of Chapter 75 and specifies

---

an award of damages. The Court found that he did not. Barnett, 2013 U.S. Dist. LEXIS 53821, at *4 ("Nothing more in support of the request for actual damages is provided and the Court will not award unsubstantiated damages.")

that "[t]he specific and general provisions of [Article 2] shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by [Article 2]." N.C. Gen. Stat. § 75-56. The NCDCA constitutes the sole remedy for unfair and deceptive trade practices in the context of debt collection. See also DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 765 (M.D.N.C. 2003) ("If the abusive conduct alleged pertains only to debt collection, the NCDCA provides a claimant's exclusive remedy."). The entirety of Plaintiff's Complaint focuses on the practices Defendants used to collect on Plaintiff's debt. In fact, Plaintiff specifically states under her UDTPA claim that it is "Defendants' unfair or deceptive acts *to collect the Debt*" that occurred in commerce and therefore constitute the basis of her claim. (Doc. No. 4 ¶ 38) (emphasis added). Therefore, Defendants' Motion is granted in respect to Plaintiff's UDTPA claims.

D.  Plaintiff Sufficiently Alleges an Invasion of Privacy Claim.

Plaintiff's fourth claim alleges "invasion of privacy by intrusion upon seclusion." (Doc. No. 4 ¶¶ 41–48). North Carolina recognizes the tort of intrusion of seclusion when "'[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for the invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Miller v. Brooks, 472 S.E.2d 350, 354 (N.C. Ct. App. 1996) (quoting Smith v. Jack Eckerd Corp., 400 S.E.2d 99, 100 (N.C. Ct. App. 1991)).

Defendant posits two arguments as to why Plaintiff fails to allege facts for an intrusion upon seclusion claim. First, Defendant argues that Plaintiff consented to

11

be contacted in the event she needed to be located after defaulting on her payments. (Doc. No. 20 at 9). Second, Defendant maintains that its means of contacting Plaintiff could not be considered offensive to a reasonable person. (Id.) Defendant states that its communications with Plaintiff consisted of nothing more than what one would expect in a business relationship between two contracting parties. (Id.). Plaintiff responds by arguing that Defendant's conduct at least raises a question of fact for the jury as to whether a reasonable person would consider it to be offensive. (Doc. No. 24 at 15–16). Plaintiff emphasizes that Defendant (1) continued to text Plaintiff after she revoked consent; (2) came to Plaintiff's residence and pounded—as opposed to knocked—on her door, frightening Plaintiff's children; (3) attempted physical entry into Plaintiff's home by attempting to twist the doorknob; (4) personally visited Plaintiff's workplace, bypassing the reception area without permission; and (5) sent Plaintiff letters at her workplace without marking them as confidential. (Id.).

There are relatively few North Carolina cases addressing the tort of intrusion upon seclusion. In Miller v. Brooks, the North Carolina Court of Appeals found the requirement of the tort fulfilled where defendants invaded a plaintiff's home, placing a hidden camera in his bedroom which recorded the plaintiff undressing, showering, and sleeping. 472 S.E.2d 350, 354 (1996). The defendants in that case also interfered with the plaintiff's mail, intercepting it, sorting it, and throwing certain pieces away. Id. Outside of physically invading another's home and opening her mail, North Carolina Courts have held that this tort also encompasses "eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, [and]

unauthorized prying into a bank account." Toomer v. Garrett, 574 S.E.2d 76, 90 (N.C. Ct. App. 2002). It seems that repeated telephone calls or text messages fits easily within this precedent.[3]

In Toomer, the plaintiff alleged that the defendants intentionally obtained information from plaintiff's state personnel file and disseminated this information to unauthorized persons. Id. The North Carolina Court of Appeals reversed the trial court's order dismissing plaintiff's intrusion on seclusion claim:

> The unauthorized examination of the contents of one's personnel file, especially where it includes sensitive information such as medical diagnoses and financial information, like the unauthorized opening and perusal of one's mail, would be highly offensive to a reasonable person. Therefore, the trial court erred in dismissing plaintiff's claim for intrusion into seclusion for failure to state a claim upon which relief may be granted.

Id. at 90. Thus, when a court can conclude that a reasonable person could find defendant's alleged actions highly offensive, it is improper for a court to dismiss a plaintiff's intrusion upon seclusion claim at the motion to dismiss stage.

The mere visit by defendant's agents to Plaintiff's workplace, standing alone,

---

[3] See also, Chaconas v. JP Morgan Chase Bank, 713 F. Supp. 2d 1180, 1185 (S.D. Cal. 2010) (using the same definition of intrusion upon seclusion to find a claim where the defendant contacted the plaintiff "380 times over a seven month period, often at a rate of five to ten times per day, despite notification that Plaintiffs were represented by counsel."); Restatement (Second) of Torts § 652B cmt. d (Am. Law Inst. 1977) ("Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.").

could not be considered highly offensive to a reasonable person when Plaintiff supplied Defendant with that address and did not revoke her consent to being contacted there. But more than that is alleged here, including allegations that Defendant contacted her repeatedly through text messages, despite Plaintiff having attempted to revoke consent; and a debt collector's attempted entry into her home. Summary judgment review is another question, one this court does not confront today. As Plaintiff's allegations stand, at least Defendant's conduct, taken as a whole and as true, could support an intrusion upon seclusion claim.

E. <u>Plaintiff Fails to Properly Allege Intentional or Negligent Infliction of Emotional Distress.</u>

Plaintiff also alleges intentional or negligent infliction of emotional distress. (Doc. No. 1 ¶¶49–55). To establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must prove "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." <u>Holloway v. Wachovia Bank & Tr. Co., N.A.</u>, 452 S.E.2d 233, 240 (N.C. 1994) (quoting <u>Dickens v. Puryear</u>, 276 S.E.2d 437, 335 (N.C. 1981)). Similarly, a claim for negligent infliction of emotional distress ("NIED") requires a plaintiff to show "(1) negligent conduct by defendants (2) where it was reasonably foreseeable that such conduct would cause and did in fact cause (3) severe emotional distress." <u>Russ v. Causey</u>, 732 F. Supp. 2d 589, 605 (E.D.N.C. 2010) (citing <u>Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.</u>, 395 S.E.2d 85, 97 (N.C. 1990)).

Defendant argues that Plaintiff has failed to establish these claims because

14

she alleges no extreme or outrageous conduct from Defendant. (Doc. No. 20 at 11). Defendant also states that Plaintiff has not alleged severe emotional distress and that Plaintiff cannot bring a claim for a third party's emotional distress. (Id. at 12–13).

While Plaintiff's allegations of emotional distress were sufficient to establish a claim under the NCDPA, they are not enough to fulfill the high bar of pleading a claim for IIED or NIED. Here, more is required to sufficiently plead *severe* emotional distress. Severe emotional distress required for both IIED and NIED consists of "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Holloway, 452 S.E.2d at 243 (quoting Johnson v. Ruark Obstetrics & Gynecology Assoc., 395 S.E.2d 85, 97, reh'g denied, 399 S.E.2d 133 (N.C. 1990)). Courts have found severe emotional distress sufficiently plead where plaintiffs specifically describe how their emotional distress manifested itself in terms of symptoms. See, e.g., Di Wang v. WOW Brows, 108 F. Supp. 3d 327, 330 (M.D.N.C. 2015) (finding it sufficient when plaintiffs alleged that the defendant caused "a constant sense of fear and apprehension while working and many sleepless nights in anticipation of harassment the next business day; a severe reduction in their self-esteem, ongoing depression, and ongoing anxiety; and severe trust issues with men and other managers at new employment opportunities.") (quotation marks omitted).

In her Complaint, Plaintiff merely claims that, due to Defendant's actions

attempting to collect on her debt, she experienced "mental anguish, anxiety, emotional distress, embarrassment, frustration, anxiety, fear, frustration, upset, and inconvenience and other damages in an amount to be proven at trial." (Doc. No. 4 ¶39); see also (Doc. No. 4 ¶53) ("mental anguish and emotional distress, in addition to fear and anxiety"). Such a generalized statement fails to meet the high bar established under North Carolina law to plead severe emotional distress. While "[a]n actual diagnosis by a medical professional is not required to assert severe emotional distress," a plaintiff must "at least forecast some evidence showing severe and disabling psychological problems." Russ v. Causey, 732 F. Supp. 2d 589, 606 (E.D.N.C. 2010) (quoting Fox-Kirk v. Hannon, 542 S.E.2d 346, 352 (N.C. Ct. App. 2001), disc. rev. denied, 551 S.E.2d 437 (N.C. 2001)).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Judgment on the Pleadings, (Doc. No. 19), is **GRANTED in part and DENIED in part**. Specifically:

1. Plaintiff's claim alleging statutory violations of the Telephone Consumer Protection Act (Count I) is **DISMISSED WITHOUT PREJUDICE**, and Plaintiff is given **fifteen (15) days** within which to file a motion seeking leave to amend her Complaint. However, if Plaintiff does not file a motion seeking leave to amend her Complaint within **fifteen (15) days**, the claim shall be **DISMISSED WITH PREJUDICE**.

2. Plaintiff's claims alleging statutory violations of the North Carolina Unfair and Deceptive Trade Practices Act (Count III) and intentional or

16

negligent infliction of emotional distress (Count V) are **DISMISSED**.

3. Plaintiff's claims for statutory violations of the North Carolina Debt Collection Act (Count II) and invasion of privacy (Count IV) may proceed.

Signed: September 17, 2018

Robert J. Conrad, Jr.
United States District Judge